NORTHWESTERN MASONIC AID ASSOCIATION v. WADDILL, *Superintendent Insurance Department, Appellant.*

In Banc, April 3, 1897.

1. **Insurance**: TAXATION OF TWO PER CENT ON PREMIUMS. The statute of 1895 taxing foreign insurance companies two per cent on all premiums received, applies only to old line insurance companies and not to companies doing insurance on the assessment plan.

2. ——: PREMIUMS: ASSESSMENT. Moneys received by assessment insurance companies by assessment on their members are not premiums within the meaning of the statute.

3. ——: CLASS LEGISLATION. The classification of insurance companies by which those doing business for profit are put in one class, and those which are doing business simply to secure some indemnity to the dependent families of its members in case of their death, are put into another class, is a natural classification, and is not in conflict with the Constitution.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for appellant.

(1) We submit two propositions arising on the face of the petitioner's bill which prevent an order and restraint, and which deny them the relief prayed for. *First:* The provisions of the act of 1895, pages 198, 199, and 200, apply to foreign insurance companies doing business in this State on the assessment plan. *Second:* The provisions of section 5869, article 3, chapter 89, Revised Statutes of Missouri, 1889, do not shield said assessment companies from the requirement and provisions of the act of 1895. (2) It is a well settled principle that a tax may be required of foreign insurance companies even though home companies are exempted therefrom. Cooley on Taxation, p. 387; *Ex parte Martin Cohn*, 13 Nev. 424; *Ex parte Robinson*, 12 Nev. 275; *Germania Ins. Co. v. Commonwealth*, 85 Pa. St. 518; *City of St Joe v. Ernst*, 95 Mo. 366. (3) Foreign corporations are not citizens such as are entitled to protection under the provisions of the federal law which declares that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. A corporation has no recognized legal existence outside or beyond the limits or the power of the sovereignty wherein it is created, and where it migrates or enters the jurisdiction of another State it is entirely dependent upon the comity of such State. *Paul v. Verginia*, 8 Wallace, 168; *Slaughter v. State*, 13 Gratt. 767; *Bank of Augusta v. Earl*, 13 Peters, 519; *W. U. T. Co. v. Mayer*, 28 Ohio St. 539. (4) The tax of two per cent of the gross receipts of all business done in this State by foreign insurance companies is a charge upon them growing out of the privilege of doing business herein. *Miller v. Weed*, 84 Ga. 685; *Weaver v. State*, 89 Ga. 642;

Angell & Ames on Corporations, sec. 486a; *People v. Home Insurance Co.*, 92 N. Y. 342; *State v. Fox et al.*, 14 Am. and Eng. Corn'n cases, 362. (5) The plaintiff corporations falling within the class so designated by legislative authority must be bound by it under the provisions of the Constitution of Missouri requiring the tax to be uniform upon the same class of subjects within the territorial limits. The act in question imposes an equal burden upon the agents of all foreign insurance companies and the defendant is a subject to no greater license than others belonging to the same class. *Cutliff v. Albany*, 60 Ga. 598; *Davis v. Macon*, 64 Ga. 132. (6) When the legislature undertakes to exercise its authority upon one class of business or occupation the same tax must be levied upon all members of that class. *Home Ins. Co. v. Augusta*, 50 Ga. 537. It will be observed that the Constitution of Georgia on the question of uniform taxation corresponds almost to the letter with our own. The Constitution prohibits any discrimination in favor of or against persons or individual members of classes, either of persons or of property in the imposition of a tax, whether the same be levied upon the property thereof or upon a franchise or right. *Pelton v. Bank*, 101 U. S. 146; *Bank v. Kimball*, 103 U. S. 734; *Bamen v. Burnside*, 121 U. S. 186; *San Francisco v. Liverpool L. & G. Insurance Co.*, 15 Pac. Rep. 380; *Railroad v. State*, 83 Am. Dec. 226; *Phœnix Ins. Co. v. Commonwealth*, 96 Am. Dec. 344. (7) To undertake to subdivide the members of these individual classes into foreign fire, foreign life, and foreign accident companies and associations, the fundamental characteristics and objects of which are common to each other, would destroy the force of the Constitution and render its application ineffectual and futile. The act of the legislature on this subject, both before and after the pas-

sage of the statute under which plaintiff claims exemption was directed to all foreign insurance companies in this State on life, property or interest, and constituting and designating such companies and associations as one class of the several subjects of taxation. (8) It is settled law that no legislative enactment will be declared unconstitutional unless it is very clearly so, and that every reasonable intendment should be made to sustain it. *State ex rel. v. Simmons Hardware Co.*, 109 Mo. 125. (9) Plaintiff corporations claim relief from taxation under the general law governing taxation of insurance companies by reason of the exempting clause of section 5869. Exceptions, privileges and exemptions are not favored in law. *State ex rel. v. Fisher*, 119 Mo. 344. (10) The State having the inherent right to impose taxes upon foreign insurance companies, the manner of which is regulated by the Constitution, no statute should be so construed as to become a nullity by reason of its coming in conflict with the Constitution when another and different or more restricted construction can be properly placed upon it. *Miller v. Kirkpatrick*, 29 Pa. St. 226; *Academy v. Philadelphia*, 22 Pa. St. 496; *Railroad v. Kane*, 112 Mo. 34; *St. Joe v. Landis*, 54 Mo. App. 315; *Ross v. Railroad*, 111 Mo. 18; *Bowers v. Smith*, 111 Mo. 45.

*W. C. & J. C. Jones, Boyle, Priest & Lehman*, and *Wm. Law, Jr.*, for respondent.

(1) The constitutional provision (sec. 7, art. 10) has no application to the question before the court. The so-called tax, payment of which the superintendent of insurance demands, is not a tax upon property. It is simply and purely a tax by way of license,—a burden upon a privilege to pursue a vocation within the State. We readily concede that the constitutional

provision relied upon by respondent to support his contention prohibits the legislature from exempting any property from taxation, and that the petitioners, like all other persons, real or artificial, are subject to taxation upon any property they may own which is located in this State. The mistake of defendant lies in the failure to distinguish between a mere right or privilege and property, and in applying to the former a constitutional provision which, by its express terms, relates only to property. Our claim is that the constitutional provision, relied upon by defendant to support his contention, relates only to the taxation of property, and not to the taxation by way of license of any calling, occupation, or business. (2) The act of 1895 does not repeal any part of the act governing assessment associations. This act, both in its title and in the body thereof, purports to have been enacted for the purpose of repealing certain specified sections of article 6 of chapter 89. In behalf of plaintiff we contend that this act must be so construed as shall make its provisions applicable only to the class of insurance to which article 6, of chapter 89 applies. In support of this contention we ask the attention of the court to the case of *Hanford v. Mass. Ben. Ass'n,* 122 Mo. 50, in which the proviso contained in section 5869 was carefully considered. *Sparks v. Knight Templars,* 61 Mo. App. 109. (3) It is true that the language of the second section of the act is broad in its terms and says that, "Every insurance company or association not organized under the laws of this State shall pay," etc., but this does not alter the situation, for under the well settled rules of construction in such cases a general provision can not be held to repeal a special enactment, unless such intent is expressed or plainly manifest. Maxwell Inter. of Statutes, p. 158; Endlich Inter. of Statutes, sec. 223; *People v. Quinn,* 59 N. Y. 83; *Cog-*

*hill v. State*, 37 Ind. 111; *Round v. Borough*, 81 Pa. St. 395; *Railroad v. State*, 29 Ala. 573; *McKenna v. Edmundstone*, 91 N. Y. 231; *Hurst, Purnell & Co. v. Samuels*, 29 So. Car. 476; *Red Rock v. Henry*, 106 U. S. 596; *State v. DeBar*, 58 Mo. 395; *State v. Fitzporter*, 17 Mo. App. 271; *Deters v. Renick*, 37 Mo. 598; *City of St. Louis v. Alexander*, 23 Mo. 483; *State ex rel. v. Judge of Probate Ct.*, 38 Mo. 529; *Vastine v. McDonald*, 38 Mo. 534; *State v. Pearcy*, 44 Mo. 159; *State v. Walbridge*, 119 Mo. 383; *State v. Wofford*, 121 Mo. 61; *State v. Noland*, 111 Mo. 473; *State ex rel. v. Slover*, 113 Mo. 202. In the act now under consideration there is an express declaration of an intent to repeal only the sections specified. This excluded any intention to repeal by implication. Where the repealing act declares what effect it is intended to have upon the existing law such effect only can be given to it. (4) Having expressly taxed "premiums" the legislature has failed to tax "assessments." An assessment as applied to insurance contracts is a very different thing from a premium. If this is so, and the distinction between assessments and premiums has been recognized by the Supreme Court of Missouri prior to the amendment of 1895, then the act of the legislature taxing premiums does not impose a tax on assessments. *Expressio unius exclusio alterius.* By the act of 1887 (now art. 3, ch. 89, R. S. 1889) the legislature undertook to define an "insurance contract on the assessment plan." That section reads: "Every contract whereby a benefit is to accrue to a person or persons named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance on the assessment plan, and the business involving the issuance of such contracts shall be carried on in this State only by duly organized corporations, which

shall be subject to the provisions and requirements of this article." The distinction is well drawn by Judge BLACK in the *Hanford* case. *Hanford v. Mass. Ben. Ass'n*, 122 Mo. 57 and 58; *Whitmore v. Sup. Lodge*, 100 Mo. 36. (5) If it had been the legislative purpose to tax assessments they naturally would, and in order to effectuate any such concealed purpose, must have done so in no uncertain terms. (6) Having used the term and expressly taxed "premiums" the omission of the term "assessments" excludes the idea that it was the purpose to tax assessments.

BRACE, J.—This is an action by injunction instituted in the circuit court of the city of St. Louis, to restrain the defendant, superintendent of the insurance department of the State of Missouri, from assessing and levying a tax of two per cent upon premiums received by plaintiff, a corporation under the laws of the State of Illinois doing business in the State of Missouri on the assessment plan, and from cancelling its license to do business, because of its failure to pay such tax; in which nine other foreign corporations of like character are joined in the petition, and for whom the same relief is prayed as for all other corporations of the same character similarly situated. To the petition, the superintendent of insurance interposed a demurrer, which was overruled. He declined to plead further, and from the decree granting injunction as prayed for, he appeals.

1. The defendant claims the right to assess and levy the tax in question by virtue of the provisions of an act of the General Assembly "approved March 20, 1895" entitled "An act to repeal sections 5958, 5959, 5961, 5962, 5967 and 5968 of article 6, chapter 89, Revised Statutes 1889, and sections 5963, 5964 and 5966 of said article and chapter, as amended by an act

approved April 3, 1891, entitled "Taxation of Insurance Companies" and to enact (6) new sections in lieu thereof. (Sess. Acts 1895, p. 198.)

Sections 1 and 2 of that act read as follows:

"Section 1.—That sections 5958, 5959, 5961, 5962, 5967 and 5968 of article 6, chapter 89, Revised Statutes of 1889, and sections 5963, 5964 and 5966 of said article and chapter, as amended by an act approved April 3, 1891, be and the same is hereby repealed and the following new sections enacted in lieu thereof, to be designated as sections 5958, 5959, 5961, 5962, 5967 and 5968."

"Sec. 2. (Sec. 5958.)   Every insurance company or association not organized under the laws of this State shall, as hereinafter provided, annually pay a tax upon the premiums received, whether in cash or in notes, in this State, or on account of business done in this State, * * * at a rate of two per cent per annum, in lieu of all other taxes, except as in this article otherwise provided; which amount of taxes shall be assessed and collected as hereinafter provided."

It is claimed that the power to levy and collect the tax in question in the manner provided in the subsequent sections, is by this section 2 (5958), conferred upon the defendant.

In order to properly appreciate the force and meaning of the terms of this section it is necessary to read them in connection with the other provisions of the general insurance law of which by this legislation they become a part.   By article 3, of that law, entitled "Insurance Companies on the Assessment Plan," such companies are defined, their organization provided for, the terms prescribed upon which foreign corporations of that character shall be permitted to do business in this State, and by section 5869 of that article it is *provided* "That nothing herein contained shall subject any

corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth."

The plaintiff and the companies named in the petition are insurance companies on the assessment plan as defined in this article, and under it, doing business in this State. To hold that moneys received by them as "*assessments*" under this plan are "*premiums*" within the meaning of section 2 (5958), which is now one of the "provisions or requirements of the general insurance laws of this State," would not only be to confound terms and disregard the well defined distinction made between them by the statute as a whole, but to ignore or directly contravene this *proviso* of section 5869. *Hanford v. Mass. Benefit Ass'n*, 122 Mo. 50. This, of course, can not be done under ordinary circumstances.

2. But it is argued that this *proviso* unless so construed becomes obnoxious to section 3, article 10, of the Constitution, which provides that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and should therefore be so construed, as not to stand in the way of the operation of section 2 (5958) upon these companies.

As was remarked in *Hanford v. Mass. Benefit Ass'n, supra:* "Prior to 1880 many associations under the law relating to benevolent associations attempted to do an insurance business without complying with the laws concerning life insurance, but such companies were suppressed by the courts." Some concessions were made to such associations by acts passed in 1880. And in 1887 an act was passed entitled "An act to provide for the incorporation and regulation of associations, societies and companies doing a life or casualty insur-

ance business on the assessment plan" (Laws 1887, p. 200). "That entire act was carried into the revision of 1889, and constitutes article 3 of the chapter on insurance of which section 5869 is a part," and applies to foreign as well as to domestic associations of this character. By this legislation life insurance companies, both foreign and domestic, were divided into two well defined and distinct classes, and a separate code provided for the regulation and government of each, to wit, *quasi* fraternal or benevolent associations doing business on the assessment plan, "the payment of whose policies depended upon the collection of assessments upon persons holding similar contracts," and insurance companies other than those doing business on this plan which for convenience might be denominated "old line premium life insurance companies," and expressly exempted the former from the provisions and requirements governing the latter, except as provided in the statute governing the former. That life insurance companies doing business in this State might well be divided into such classes and a separate code appropriate to their different natures be provided, for the regulation of each class, by legislative enactment, can not be doubted. The classification by which those associations which are doing business for 'profit, are put in one class and those which are doing business simply to secure some indemnity to the dependent families of its members, in case of their death or disability, are put in another, is a reasonable and natural one, and might well be made for the purposes of taxation, even if there were no other reason for such a classification, without violating the constitutional requirement of uniformity, for it is well-settled law "that the requirement of equality and uniformity does not preclude exemption from taxation, nor the division of things taxable into classes, and the imposition of taxes which, while bearing ..

equally upon the different members of each class, bear unequally upon the classes in the aggregate. A legislative division of this sort can not be interfered with by the courts." 25 Am. and Eng. Ency. of Law, pp. 61 and 62, and cases cited in note 4; p. 61 and note 1, p. 62; *City of Aurora v. McGannon*, 138 Mo. 38, *ante*. So that when in 1895, the legislature determined to impose a license or occupation tax on insurance companies as evidenced by the passage of the act "approved March 20, 1895," they could, without infringing upon this constitutional requirement, have imposed such tax upon both or either of these classes. That they intended to impose it upon the *premium* life and casualty insurance companies only, and not upon the life and casualty insurance companies doing business upon the assessment plan, is plainly evident from the act which left article 3 intact, and section 5869 of that article containing the exemption aforesaid unrepealed, while specifically repealing other sections of the general insurance law, and by its terms imposing the tax upon "premiums" only and not upon "assessments."

The trial court did right in granting the injunction, and its decree is affirmed. All concur except SHERWOOD, J., absent.