READ, Ins. Com'r, et al. v. ROYAL NEIGHBORS OF AMERICA.

No. 32676. April 15, 1947.

*179 P. 2d 679.*

Mac Q. Williamson, Atty. Gen. and Fred Hansen, First Asst. Atty. Gen., for plaintiffs in error.

Lendon A. Knight, of Rock Island, Ill., and Embry, Johnson, Crowe, Tolbert & Shelton, all of Oklahoma City, for defendant in error.

RILEY, J. This is an appeal from a judgment holding that fraternal beneficiary associations such as defendant in error, plaintiff below, were not brought within purview of the gross insurance premium tax laws of the state by the amendment in the year 1945 (Title 36, S.L. 1945, ch. 1, p. 123).

The judgment was based on a finding that fraternal beneficiary associations were distinguished under the public policy, from insurance companies, and so exempt from payment of the tax as a condition of securing licenses or transacting business within the state.

Royal Neighbors of America, as plaintiff, sought injunctive relief as against defendants, to avoid imposition of penalties, collection of the tax, and interference with the plaintiff in the transaction of its business as a fraternal beneficiary association in the State of Oklahoma.

Plaintiff's petition, tested by defendants' demurrer, was sustained; defendant declined to plead further; and injunctive relief was granted as sought in plaintiff's petition. Defendants appeal.

The sole issue presented is whether plaintiff in error and fraternal beneficiary associations similarly situated are required to pay, as a condition of right to transact business in Oklahoma, a tax of 4% of the gross assessments and dues collected from its members.

In Royal Neighbors of America v. State ex rel., 181 Okla. 63, 72 P. 2d 325, defendant in error's type of organization is set forth and its beneficiary certificates and assessments are compared with stipulated premiums collected and policies issued by insurance companies.

The similarity was held not to "have the effect of converting the defendant into an insurance company and destroying the defendant's existence as a fraternal association so as to render defendant liable for the taxes . . . sought to be collected."

The constitutional provision, sec. 2, art. 19, was observed in this court's opinion, supra, contemplating that "until otherwise provided by law" foreign insurance companies should pay a substantial entrance fee and annual tax from which "fraternal insurance companies" were specifically exempted.

Prior to the amendment in 1941, the gross premium tax was levied "in the amount of two per centum on all premiums collected in this state . . . (sec. 10478, O.S. 1931). The tax was then levied upon "every foreign *insurance company* doing business in this state".

By the amendment in the year 1941, as reflected by 36 O.S. 1941 §104, "every foreign insurance company, copartnership, association, inter-insurance exchange, or individual who is a nonresident of the State of Oklahoma, doing business in the State of Oklahoma in the execution of exchange contracts of indemnity, or as an insurance company of any nature or character whatsoever", was required to pay an annual tax of 4% on all premiums collected in this state.

During the period of four years after the amendment of 1941, no demand was made upon any fraternal beneficiary association for payment of the tax, but annual licenses were duly issued to them as before.

In 1945 the statute levying the tax was again amended. The amendment became effective February 28, 1945 (Title 36 S.L. 1945, ch. 1, p. 123).

The effective part of the 1945 amendment made subject to the tax every "domestic" as well as foreign insurance company, copartnership, association, inter-insurance exchange, or individual either "resident or a nonresident" and "doing business in the State of Oklahoma . . . as an insurance company . . .".

By the amendment, the license fee was fixed at $100, an annual tax of $2 on each agent was levied as well as an annual tax of 4% on "all of said premiums . . . for the privilege of writing, continuing, and/or servicing insurance on lives, property and/or other risks in this state and of making and servicing investments therein during the succeeding license year".

A report was required to be made, under oath of the president, secretary,

or chief officer of such company, to the Insurance Commissioner. The report was required to show the total amount of premiums received during the preceding calendar year or since the last return of such premium was made by such company "from insurance of every kind upon persons or on the lives of persons resident in this state, or upon real and personal property located within this state", etc.

Terms used in the amendments of 1941 and 1945 are very broad. Thereby, the taxable subjects of the act are extended to include "copartnerships, associations, inter-insurance exchange, or individual", but the extension is specifically limited to those subjects "doing business in the State of Oklahoma in the execution of exchange contracts of indemnity, or as an insurance company of any nature or character whatsoever".

The fraternal beneficiary association is not shown to be engaged in the business of executing exchange contracts of indemnity and the cited public policy of the state distinguishes it from an insurance company. Therefore, the broad language of the amendment does not specifically include, for the purpose of taxation, the fraternal beneficiary association.

In State v. Tulsa Flower Exchange, 192 Okla. 293, 135 P. 2d 46, the rule of strict construction provided as to a statute authorizing the collection of a tax from a certain class was applied and "the courts", it was said, "will not enlarge . . . provisions to make them applicable in any case not clearly within contemplation . . . ". Campbell v. Cornish, 163 Okla. 213, 22 P. 2d 63.

The differentiation under the public policy in Oklahoma, between fraternal beneficiary associations and insurance companies, stated in the Royal Neighbors Case, supra, exempting the former from the tax specifically levied upon the latter, "has been universally recognized in legislation, and is a matter of common knowledge". Supreme Council of Arcanum v. Behrend, 247 U.S. 394, 62 L. Ed. 1182. Thus, "*fraternal benefit societies and the character* of life insurance business they do" is "in a class separate from that of other kinds of life insurance companies and business". Lockhart v. American United Life Ins. Co. (Tex. Civ. App.) 181 S.W. 2d 607. As shown by the legislative record in this state, like that of Michigan, where "various amendments have been made to the act governing life insurance companies and affecting the life insurance business, but always under appropriate titles, when fraternal societies have been affected by legislation, they have been mentioned." Maccabees v. Barry, 155 Mich. 693, 118 N.W. 585; McKnelly v. Brotherhood of American Yeomen, 160 Wis. 514, 152 N.W. 169; Loudon v. Modern Brotherhood of America, 107 Minn. 12, 119 N.W. 425. This rule is stated in 50 Am. Jur. §229. It is said, "Accordingly, a purpose to effect a radical departure from a firmly established policy will not be implied, but must be expressed in clear and unequivocal language . . . ."

When such associations are governed by special provisions of the statute, they are generally exempt from the provisions of the insurance laws of the state and "no law shall apply to them unless they be expressly designated therein". 36 O.S. 1941 §271.

In Oklahoma, it has been the uniform practice of the Legislature, in enacting measures intended to apply to fraternal beneficiary associations, to expressly designate such societies. Such was the example in 1935 relating to mortality endowment contracts. The prohibition read: "No life insurance company, mutual aid association, or *fraternal beneficiary society* . . . shall hereafter be permitted . . . ." to issue policies, certificates, or contracts to policyholders or members, of a particular kind prohibited. 36 O.S. 1941 §224.

The "fraternal society" was specifically enumerated with an "*insurance company*" in legislation relating to re-

ceiverships in 1937. (36 O.S. 1941 §76), and provisions of statute applicable to all types of companies writing life or health and accident insurance were extended by the same Legislature to fraternal beneficiary associations by use of the words "fraternal societies". 36 O.S. 1941 §106.

Title 36, O.S. 1941 §271, defines fraternal beneficiary associations as nonprofit corporations, societies, or voluntary associations existing for the benefit of members and their beneficiaries. Provisions of the statute require a lodge system and a representative form of government. Funds for the operation of such associations and benefits enjoyed by its members are restricted to those derived from assessments and dues. Benefits, in case of death of members, are payable only to a restricted class of dependents.

By force of statute, section 271, supra, "such associations shall be governed by this article . . . and shall be exempt from the provisions of the insurance laws of this state . . . and no law shall apply to them unless they be expressly designated therein".

The words "assessments and dues", "certificate" and "members" are exclusively used with reference to such organizations, whereas the words "premiums", "policies", and "policyholders" are employed by the statutes as pertaining to insurance companies. This distinction is evidenced also in provisions of statute intended to apply to both insurance companies and such societies. 36 O.S. 1941 §224.

In Northwestern Masonic Aid Ass'n v. Waddill, 138 Mo. 628, 40 S.W. 684, an act was considered levying a tax on premiums received by "every insurance company or association" not organized under the laws of the state. It was held such organizations, as defendant in error, were not subject to the tax and that to hold monies received by them as assessments to be premiums would not only confound terms and disregard well-

defined distinctions within the public policy, but would also be to ignore or directly contravene the statute making nonapplicable to such organizations the insurance laws of the state. Such was the rule in Bankers' Life Ins. Co. v. Chorn, Insurance Supt. (Mo.) 186 S.W. 681.

In Lockhart et al. v. American United Life Ins. Co. (Tex. Civ. App.) 181 S.W. 2d 607, where it was contended that beneficial certificates of fraternal societies were equivalent to policies of insurance, and their assessments amounted to premiums within the meaning of the statute imposing a tax upon "gross premiums" paid "upon policies of insurance" issued by foreign life insurance companies, the court adhered to the general rule and continued to enforce the distinction, as a result of which the tax was found not to extend by implication to fraternal societies.

An examination of terms employed in the amendments of 1941 and 1945 discloses no reference made to assessments and dues or members. The language used refers only to premiums and policyholders, thus indicating an intention to measure the tax levied only by premiums received by insurance companies and to exclude assessments and dues paid by members of fraternal beneficiary associations.

Plaintiffs in error rely in part upon Hill v. Farmers Mutual Fire Ins. Co., 129 Mich. 141, 88 N.W. 392, holding that the words "assessments" and "premiums" are used interchangeably, but the view therein expressed was limited and restricted to the terms employed consecutively within the same clause of a contract. Upon the issue presented in the case at bar, the view prevailing in Michigan conforms to the general rule. Maccabees v. Barry, 155 Mich. 693, 118 N.W. 585.

There are other indications of the legislative intent contained in the amendments to continue the public policy expressed in the statute and to preserve the distinction.

The amendment in 1941, in addition to the gross premium tax, levied an annual tax on each agent and required payment of the tax to the State Insurance Board. The annual tax on each agent was required to be paid "as now provided by section 10542, O.S. 1931", but by the terms of section 10542, supra, fraternal societies were not required to pay tax levied on agents and it seems illogical to assume an intention to require payment of the premium tax, at the same time to omit a levy of taxes upon agents as against the fraternal societies, governed as they are by the Fraternal Insurance Board.

The amendments as made specifically relate to the general subject of insurance companies. The amendments nowhere make reference to fraternal beneficiary associations as separately treated by the statutes. Thus there is indicated a consistent legislative policy to treat the special statutory provisions relating to such societies as an exception to the general act as subsequently amended. This conforms to the general rule unless repeal of the special provisions is in express words or by necessary implication. 59 C.J. 1056; 50 Am. Jur. §560; Pfister v. Johnson, 173 Okla. 541, 49 P. 2d 174.

Plaintiffs in error note the fact that the amendatory act of 1945 specifically exempts only two types of subjects from the provisions of the act. By the provisions of section 3, the act, under specified conditions, is made nonapplicable to the *Grange Order of Patrons of Husbandry* and the *Oklahoma State Union of Farmers' Educational and Co-Operative Union of America*.

The rule stated in 50 Am. Jur. §434 is suggested, under which, "where express exceptions are made, the legal presumption is that the Legislature did not intend to save other cases from the operation of the statute". The text, however, is set forth in the Attorney General's brief that "The specification by the Legislature of exceptions to the operation of a general statute does not necessarily preclude the court from applying other exceptions".

It is not urged by either party that the fraternal beneficiary association's organization or system of doing business is substantially the same or similar to that of the types of organizations or insurance business of the omitted class. Therefore, a sufficient reason probably existed for a special mention of the designated types of subjects omitted from provisions of the act, whereas the Legislature is presumed to have had knowledge that fraternal beneficiary associations were theretofore separately classified and distinguished under existing statutes and no reason existed to again specifically set such a society apart from the general provisions of the statute. Union Savings Ass'n v. Burns, 74 Okla. 1, 176 P. 227; Lockhart v. American Mutual Life Ins. Co. (Tex. Civ. App.) 194 S.W. 2d 285.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, WELCH, CORN, and ARNOLD, JJ., concur.